## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| OSCAR O. HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 7559 |
| ) | |
| ) | |
| VALET PARKING SERVICE, INC. ) | |
| and LOYOLA UNIVERSITY MEDICAL ) | |
| CENTER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Loyola University Medical

Center's ("Loyola") motion for summary judgment and on Defendant Valet Parking

Services' ("Valet") motion for summary judgment. For the reasons stated below, we

grant Loyola's motion for summary judgment and grant Valet's motion for summary

judgment.

## BACKGROUND

Plaintiff Oscar O. Hernandez ("Hernandez") lost his left arm in an accident in

1995. (Hern. Dep. 9). Hernandez alleges that he began working for Valet in

1

December 2001 as a "Hiker." Valet acted as a subcontractor for InterParking Incorporated ("InterParking"), which had a contract with Loyola for valet services. ( R L SF 8, 12). Hernandez's duties for Valet allegedly involved parking and retrieving cars from locations where Valet was contracted to provide valet parking services. Hernandez claims that in May 2002, he was transferred to Valet's work-site at Loyola. According to Hernandez, he performed his job in a manner that was satisfactory to Valet. Hernandez claims that, despite his satisfactory work performance, he was transferred to another Valet work site because representatives of Loyola complained that "they did not want a one-armed Hiker parking cars at its facility." (Compl. Par. 3).

Hernandez filed discrimination charges with the Equal Employment Opportunity Commission in September 2003. Hernandez claims that thereafter Valet retaliated against him by enforcing rules against him differently than with other employees, transferring him to another facility, and assigning him work other than parking and retrieving cars, which deprived him of an opportunity to earn tips. Hernandez brought the instant action, which includes a claim brought against Valet and Loyola alleging discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count I), and an ADA retaliation claim brought against Valet (Count II).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most

3

favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Loyola's Motion for Summary Judgment

Loyola argues that it is entitled to summary judgment because it is not the employer of Hernandez and because Loyola can be held liable under the de facto/indirect liability theory.

#### A. Whether Loyola is Hernandez's Employer

The ADA only protects the employees of an employer. An independent contractor hired by an employer does "not have standing to sue under" the ADA. *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 642 (7th Cir. 2004); *see also Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998)(quoting *Birchem v. Knights of Columbus*, 116 F.3d 310, 312 (8th Cir.1997) for the proposition that "[t]he ADA protects 'employees' but not independent contractors"). In order to determine whether a plaintiff was an employee of the defendant, a court must consider a variety of facts, of which the most important factor is the amount of " control or supervision" exerted by defendant over the

4

plaintiff. *Id.* The court should also consider: "the kind of occupation and nature of skill required, including whether skills are obtained in the workplace; . . . responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; . . . the method and form of payment and benefits; and, . . . . the length of job commitment and/or expectations." *Id.*

In the instant action, Loyola argues that Hernandez's employment was under the exclusive control of Valet. Hernandez attempts to sidestep this issue on several occasions in his response to Loyola's statement of material facts. Pursuant to Local Rule 56.1, when a party files a motion for summary judgment, each party must prepare a statement of material facts and each party is required to respond to the opposing party's statement of material facts with either an acceptance or a denial of each fact. A denial is improper if the denial is not accompanied by specific references to admissible evidence, or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)(stating in addition that "[t]he purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument"). Pursuant to Rule 56.1, any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1. *See also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D.Ill. 2003)(indicating that

evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). A court is not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994). Further, the Seventh Circuit has held "that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating, in addition, that "[s]ubstantial compliance is not strict compliance").

In paragraph eight of Loyola's statement of material facts, Loyola refers to the contract it entered into with InterParking. Hernandez avoids providing any definitive response to paragraph eight and instead asserts vaguely that the contract document referred to by Loyola lacks a proper foundation. Hernandez has not shown that the document would be inadmissible at trial and Hernandez's evasive response is not sufficient to deem the facts in paragraph eight to be disputed. Thus, pursuant to Local Rule 56.1 Hernandez acknowledges that under the contract, InterParking was required to "[e]mploy, discharge, uniform, and pay all employees or independent contractors" under the contract. ( R L SJ SF 8). The contract also provided that InterParking would purchase various types of insurance for the employees and that InterParking received a management fee. ( R L SJ SF 8).

Loyola points out in paragraph number nine of its statement of facts that none

6

of the contract's provisions provided Loyola with the right to "hire, fire, supervise, discipline, or otherwise control the employees or independent contractors hired by InterParking." (SF 9). Hernandez again provides an evasive response, neither admitting nor denying Loyola's statement and, indicating instead that none of the provisions of the contract preclude Loyola from performing the above functions. It is thus undisputed that the contract provisions did not provide Loyola with the ability to perform the above functions. ( R L SJ SF 9). Hernandez also admits, pursuant to Local Rule 56.1, that InterParking formed a subcontract with Defendant Valet to perform some of InterParking's duties under the Contract. ( R L SJ SF 12).

Hernandez admits, pursuant to Local Rule 56.1, that Valet promulgated work rules regarding his job and maintained his personnel records. ( R L SJ SF 17). Hernandez admits, pursuant to Local Rule 56.1, that in 2002, 2003, and 2004 Valet, as his employer, issued W-2s and made federal, state, and other tax withholdings for Hernandez. ( R L SJ SF 18). Hernandez admits, pursuant to Local Rule 56.1, that Valet paid him wages in accordance with a collective bargaining agreement, that Valet required him to wear a uniform, and disciplined him for not conforming to the uniform rules. ( R L SJ SF 19, 20) (Hern. Dep. 48). Hernandez admits, pursuant to Local 56.1, that Valet assigned him to perform valet work at Dave & Buster's Restaurant in Chicago, Illinois, and that it was Valet that reassigned Hernandez to work at the Loyola location. ( R L SJ SF 22-23). Hernandez admits pursuant to Local Rule 56.1, that Valet "supervised [his] work," approved his requests for

vacation and personal days, charged him for uniforms, and deducted insurance premiums from his paycheck. ( R L SJ SF 24). Hernandez admits that Jose Martinez, an employee of Valet, continued to be Hernandez's supervisor while Hernandez worked at the Loyola location. ( R L SJ SF 25)(Hern. Dep. 70). When Hernandez was specifically asked at his deposition as to who supervised his work at Valet, Hernandez did not indicate that any employee of Loyola supervised his work. (Hern. Dep. 70). Instead, Hernandez responded that "[i]n the mornings Jorge Cerato" supervised his work and "in the afternoons Jose Martinez" supervised his work, both of whom worked for Valet. (Hern. Dep. 70).

Loyola provides in paragraph 26 of its statement of material facts that the only type of direct instructions that Loyola gave to any Valet workers was that "[o]nce or twice a week, when traffic became congested, Bill Stockus, an employee of LUMC, would inform Jose Martinez which parking lot needed more runners." ( L SJ SF 26). Hernandez indicated in response that he disagrees with a part of the paragraph, but again provides no actual basis to dispute the facts. Hernandez responds by claiming that Loyola "did not want a one-armed driver, causing Hernandez to be transferred," which is not responsive to the facts presented by Loyola and, thus, the facts in paragraph 26 are deemed to be undisputed. ( R L SJ SF 26). Finally, Hernandez admits that after he was transferred away from the Loyola location, Valet continued to set his wages, approve personal days, set his work schedule, and issue disciplinary warnings. ( R L SJ SF 29).

Hernandez asserts in his answer to Loyola's motion for summary judgment that Loyola "totally controlled the physical workplace where Plaintiff worked." (Ans. L SJ 4). However, such an assertion is directly contrary to the above facts that are deemed for the purposes of summary judgment as undisputed pursuant to Local Rule 56.1. Also, it is the nature of a valet company that contracts out its valet services to have its employees work at locations where the contracting employers control the "physical workplace," but, as the above law indicates, the factor to consider is the control over the plaintiff's work and not over the physical workplace. Hernandez admits that, in regard to his daily work, Loyola had only intermittent and limited input. ( R L SJ SF 26). Hernandez argues that Loyola had control over certain parking fees and expenses, but even if that were so, such facts are a far cry from any facts that would indicate Loyola was the employer of Valet's employees. Finally, Hernandez argues that Loyola controlled which Valet employees worked at the Loyola location. Also, Hernandez has not pointed to sufficient evidence for a reasonable trier of fact to find that Loyola had such an ability to control Valet's workers. Even if that were true, such a fact alone would not allow a reasonable trier of fact to conclude that Hernandez was an employee of Loyola. Hernandez admits, pursuant to Local Rule 56.1, that he was in fact transferred to the Loyola location, not at Loyola's request but at Hernandez's. ( R L SJ SF 23). Hernandez specifically stated at his deposition that he was transferred to Loyola because he asked the manager for a transfer. (Hern. dep. 21-22). There is a complete absence of evidence

9

that shows that Loyola had the actual or apparent power to choose its valets or to order Hernandez's transfer, and any statements to the contrary are pure speculation on Hernandez's part. Therefore, no reasonable trier of fact could conclude that Loyola was Hernandez's employer.

The evidence also reflects that Loyola was concerned about safety on its property, due to the fact that Hernandez was driving cars on the property with only one arm. No reasonable trier of fact could fail to conclude that Loyola's safety concerns were anything but legitimate concerns about the safety of the people on Loyola's property. Hernandez admits that he is able to drive stick shift cars and that he does so by holding the steering wheel with his legs as he shifts, while simultaneously controlling the acceleration and clutch pedals with his feet. (Hern. Dep. 12). Hernandez would unquestionably be in a precarious position while his leg held the steering wheel and his feet operated the pedals and Hernandez would clearly not be able to respond with corrective steering if needed to avoid a dangerous situation. Hernandez claimed at his deposition that the time spent with his leg on the steering wheel was only a second, but a dangerous situation can present itself to a driver at any time.

Also, a manual vehicle requires shifting every time the vehicle accelerates and decelerates and, thus, Hernandez would be required to hold his leg on the steering wheel many times for each vehicle he parked or retrieved. Thus, Loyola's safety concerns were undeniably legitimate.

10

B. De facto/Indirect Liability

Hernandez also argues that even if Loyola was not his employer, Loyola can be held liable under the ADA pursuant to the de facto/indirect liability theory. However, Loyola correctly points out that it was not given adequate notice of such a claim in the complaint. Hernandez only decided to pursue this theory after Loyola filed its motion for summary judgment and Hernandez realized the deficiencies in his existing claim. Loyola was thus denied an opportunity to conduct discovery regarding such a theory, and such gamesmanship is not condoned by this court and by the Seventh Circuit. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)(stating that "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"). In addition, even if Hernandez had raised the de facto/indirect liability theory in a timely manner, his claim cannot succeed. The only controlling precedent cited by Hernandez in support of the theory is *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487 (7th Cir. 1996). However, the Court in *Alexander* merely referred to *Shrock v. Altru Nurses Registry*, 810 F.2d 658 (7th Cir. 1987), in which the Court alluded to the possibility of a liability theory based upon "an indirect employer-employee relationship. . . ." *Id.* at 660; *Alexander*, 101 F.3d at 493 n.2. The Court in *Alexander* did not adopt the de facto/indirect liability theory. Rather, the court indicated that it was "leav[ing] open the question that went unanswered in *Shrock*, 810 F.2d at 660--*i.e.*, whether an employee of employer *X* may bring a Title VII

11

action against employer *Y* when *Y* is not his employer, but merely someone whose discriminatory conduct interferes with his employment with employer *X*." *Id.* at 493 n.2. Hernandez also cites *Kerr v. WGN Continental Broadcasting Co.*, 229 F.Supp.2d 880, 887 (N.D.Ill. 2002), which adopted the de facto/indirect theory, but we do not agree with the holding in *Kerr* and its expansion of the coverage of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the ADA. Hernandez also cites *United States E.E.O.C. v. Foster Wheeler Const., Inc.*, 1999 WL 515524, at *5 (N.D. Ill. 1999), which adopted the same theory. We likewise disagree with the reasoning in *Foster*. The ADA and Title VII specifically provide for liability of an employer and make no provisos for other entities that relate to a plaintiff in an indirect manner. Title VII and the ADA are clear in the limitations of their scope. 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e(a)(f); 42 U.S.C. § 12112(a); 42 U.S.C. § 12111(2).

This rejection of the indirect liability theory is also consistent with the Seventh Circuit's refusal to extend liability to protect independent contractors. *See, e.g., Flannery*, 354 F.3d at 642. There is no sound basis for finding a new cause of action under Title VII or the ADA based upon interference with the employee/employer relationship and an indirect relationship. Also, the Seventh Circuit has indicated that this theory would only apply, if at all, in a case "in which the defendant so far controlled the plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer of the

12

plaintiff . . . ." *E.E.O.C. v. State of Ill.*, 69 F.3d 167, 169 (7th Cir. 1995). This is clearly not the case in the instant action. Hernandez admits, pursuant to Local Rule 56.1, that Valet rather than Loyola controlled virtually every facet of his employment and that Loyola's input regarding his daily activities was isolated and limited. Also, based upon the evidence in this case, no reasonable trier of fact could conclude that Loyola interfered with the employment relationship between Hernandez and Valet, nor could one conclude that the de facto/indirect liability theory is applicable in the instant action. Finally, as will be explained below in regard to Valet's motion, all of Hernandez's claims, which are based on the ADA, can be resolved in Defendants' favor on summary judgment because there is not sufficient evidence that Hernandez is disabled as defined under the ADA. Therefore, based upon all of the above, we grant Loyola's motion for summary judgment.


## II. Valet's Motion for Summary Judgment

Valet argues that it is entitled to summary judgment on all claims brought against it. A plaintiff can pursue a failure-to-accommodate claim under the ADA and can pursue a discriminatory treatment claim under the ADA. *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999). These two types of claims are completely "separate and distinct" claims. *Id.* Another type of claim that is available under the ADA is an ADA retaliation claim. *Zak v. Ryerson Tull, Inc.*, 2005 WL 946871, at *7 (N.D. Ill. 2005). In the instant action, Hernandez has

13

brought against Valet an ADA discriminatory treatment claim, an ADA failure to accommodate claim, and an ADA retaliation claim. Valet moves for summary judgment on all three claims.

### A. Discriminatory Treatment Claim

For a discriminatory treatment ADA claim in situations where there is not "direct evidence of disability discrimination, a plaintiff may prove his case indirectly by employing the burden-shifting approach set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001). Hernandez has not pointed to sufficient evidence to proceed under the direct evidence approach and will need to proceed under the indirect approach. Under the indirect approach, in order to defeat a defendant's summary judgment motion, a plaintiff must establish that: "(1) he is disabled within the meaning of the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment." *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to "identify a non-discriminatory reason for its employment decision." *Id.*

14

### 1. Whether Hernandez was Disabled or Perceived as Disabled

Valet argues that Hernandez has not shown himself to be disabled under the ADA. Not every physical or mental ailment renders an individual disabled under the ADA. *See Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 675 (7th Cir. 1998)(stating that "[n]ot every physical or mental impairment 'counts' for ADA purposes, because most disabilities from which people suffer (bad vision, impaired hearing, arthritic joints, diabetes) do not have a substantial enough effect on their major life activities"). The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

In order to show that a individual is limited in regard to a major life activity, the individual must show that he is "impaired in [his] ability to 'perform the variety of tasks central to most people's lives.'" *Rooney*, 410 F.3d at 380-81 (quoting *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 201 (2002)). In making such an inquiry, the court should not consider whether the individual can "perform a particular job" related to the individual's employment. *Id.*; *see also Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 200-01(2002)(stating that "[w]hen addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks

15

associated with her specific job"). Rather, the activities that should be the focus of the court's inquiry are "those basic activities that the average person in the general population can perform with little or no difficulty," which include activities such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Dalton*, 141 F.3d at 675 (quoting in part 29 C.F.R. Pt. 1630, App. § 1630.2(i)); *see also Toyota Motor Mfg., Kentucky, Inc.*, 534 U.S. at 201-02 (stating that "household chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives, and should have been part of the assessment of whether respondent was substantially limited in performing manual tasks").

In the instant action, Hernandez acknowledges the above elements for an ADA discriminatory treatment claim, which include a showing that he is disabled under the ADA, but then completely avoids any direct analysis of the issue. Hernandez states in a conclusory fashion that Valet "admits that Hernandez is disabled or at least is viewed as being disabled." (Ans. V SJ 4). However, Hernandez does not provide any citation or any support for such an assertion regarding Valet's position. (Ans. V SJ 4). In fact, Valet specifically asserts that Hernandez has not shown himself to be disabled under the ADA. (V SJ Par. 9). Entirely absent in Hernandez's answer to Valet's summary judgment motion are arguments or references to evidence showing that Hernandez is limited in his major life activities. Hernandez has done nothing more than allege that he lost his left arm.

Hernandez has thus not pointed to sufficient evidence for a reasonable trier of fact to conclude that he is disabled. In addition, we note that Hernandez fails to point to evidence regarding his major life activities, but in regard to the work activities, Hernandez actually emphasizes his ability to adequately perform all necessary with activities despite his missing arm. (Hern. Dep. 12). Finally, Hernandez has not pointed to sufficient evidence that would enable a reasonable trier of fact to conclude that Hernandez was perceived as disabled.

### 2. Adverse Employment Action and Similarly Situated Individuals

Hernandez argues that he suffered an adverse employment action when he was transferred from the Loyola site to the Lutheran General Hospital ("Lutheran") site. The Seventh Circuit has explained that "a lateral transfer of an employee who retains the same salary and benefits is not, without more, sufficient to constitute an adverse employment action." *Tyler*, 245 F.3d at 972(stating that "not everything that makes an employee unhappy can form the basis of a federal discrimination suit"). Hernandez claims that after he was transferred from the Loyola location to the Lutheran site, he made a "lot less money," (Hern. Dep. 34), and that he was "transferred to another less favorable location where the tips were not as good. . . ." (Ans. V SJ 4). However, Hernandez has not presented sufficient evidence for a reasonable trier of fact to conclude that he made less money at the Lutheran location than at the Loyola location. There is not one citation or reference to any evidence in

17

Hernandez's argument pertaining to the adverse employment action. Instead, Hernandez merely provides the court with a conclusory statement. Hernandez has filed a statement of additional facts in response to Valet's motion for summary judgment, in which he asserts that he earned less tips at Lutheran than he did at Loyola. (V SJ ASF 12). However, Hernandez cites nothing more than his deposition testimony during which he made the same conclusory statement.

Hernandez also admitted at his deposition and admits, pursuant to Local Rule 56.1, that he did not keep any records of his tips and indicated that he has no records of his earnings other than his tax returns. (Hern. Dep. 37)( R V SJ SF 14). Valet attempted to obtain information during Hernandez's deposition that might have shed light on his tips by inquiring about Hernandez's tax returns. Hernandez refused to respond to the questions regarding his tax returns, based on his Fifth Amendment privilege. (Hern. Dep. 39). When a party in a civil action invokes the Fifth Amendment privilege, the privilege "does not forbid inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005). Whether or not Hernandez will be prosecuted for violations of the tax laws is not before us at this juncture. However, in the absence of Hernandez's testimony regarding his tax returns, the court cannot infer that Hernandez's responses at his deposition would have shown that he made as much or more money at Lutheran. Hernandez cannot choose to bring the instant action, base his case on

18

allegations that he was forced to leave the Loyola location and made less money at the Lutheran location, and then refuse to discuss the pertinent evidence such as his tax returns by hiding behind the Fifth Amendment. We note that even without drawing an adverse inference, our ultimate conclusion regarding the adverse employment action element would remain unchanged. Finally, Hernandez admits that when he was transferred from the Loyola location to the Lutheran location, Hernandez was given a $1.75 raise in his hourly wage. ( R V SJ SF 13). Therefore, Hernandez has not pointed to sufficient evidence for a reasonable trier of fact to conclude that he suffered an adverse employment action. In addition, Hernandez failed to point to evidence showing that similarly situated employees were given more favorable treatment.

### B. Failure to Accommodate Claim

Hernandez also contends that Valet failed to accommodate Hernandez's alleged disability. For a failure to accommodate claim, a plaintiff is required to establish that: "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). We need to proceed no farther than the first element because, as is explained above, there is insufficient evidence for a reasonable trier of fact to find Hernandez to be deemed disabled under the ADA. Therefore, we grant Valet's motion for summary

judgment on the failure to accommodate claim.

### C. Retaliation Claim

Hernandez claims that Valet retaliated against him after he complained about discrimination due to his alleged disability. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The ADA also provides, that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

Hernandez does not have sufficient evidence to proceed under the direct method of proof and will need to proceed under the indirect method. Under the indirect method of proof, a plaintiff bringing an ADA retaliation claim must establish a *prima facie* case by showing that: 1) "after filing the charge only he ... was subjected to an adverse employment action," 2) no "similarly situated employee who did not file a charge, was subjected to an adverse employment action," and 3) "he was performing his job in a satisfactory manner." *Stone v. City of Indianapolis*

20

*Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If the defendant responds with no evidence, then summary judgment should be entered for the plaintiff. *Id.* However, if the defendant is able to point to "unrebutted evidence of a noninvidious reason for the adverse action," the defendant is entitled to summary judgment. *Id.*

In the instant action, Hernandez claims that he filed his initial charges against Valet with the Equal Employment Opportunity Commission ("EEOC") in September 2003. (Ans. V SJ 5). Hernandez claims that after he filed the charge his duties were eventually altered so that he worked in the valet booth where he could not drive and earn tips. However, Hernandez has failed to point to evidence showing that similarly situated employees were treated more favorably than him or that he was subjected to an adverse employment action. Hernandez has likewise failed to point to evidence that showed that he was performing his job satisfactorily during the time of the alleged retaliation. Hernandez offers little more than his own speculation that there was retaliation against him because he filed the EEOC charge. On the other hand, Valet has offered legitimate reasons and supporting evidence for all of its actions after the date on which Hernandez filed the charge. Hernandez admits, pursuant to Local Rule 56.1, that he was allowed to work at the Lutheran site until Valet lost its contract with Lutheran and all Valet employees were removed from the site. ( R V SJ SF 17). Hernandez admits that after he left the Lutheran site he worked at the University of Chicago Hospital site, but only worked there for one day. ( R V SJ SF 17). Hernandez argues that he was assigned to jobs that limited

his opportunity to drive cars, but there is no evidence that such assignments were anything other than the ordinary course of business. Therefore, we grant Valet's motion for summary judgment on the ADA retaliation claim.

## CONCLUSION

Based on the foregoing analysis, we grant Loyola's motion for summary judgment and grant Valet's motion for summary judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 27, 2005